# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| E.B. and ) | |
| H.A., Individually and ) | |
| As Parent and Next Friend of E.B., ) | |
|     Plaintiffs, ) | Case No. 21-cv-1724 |
| ) | |
| v. ) | |
| ) | |
| CHICAGO PUBLIC SCHOOL DISTRICT ) | |
| 299, a/k/a CHICAGO BOARD OF ) | |
| EDUCATION, JANICE K. JACKSON, in her ) | |
| Official Capacity as Chief Executive Officer, ) | |
| CHICAGO PUBLIC SCHOOLS, ) | |
|     Defendants. | |

## COMPLAINT

NOW COME Plaintiffs E.B[1] and H.A., individually and as the natural parent and next friend of E.B., for their Complaint against Defendants Chicago Public Schools District No. 299 ("District") and Dr. Janice K. Jackson, in her capacity as Chief Executive Officer ("CEO") of CPS, hereby state as follows:

## PRELIMINARY STATEMENT

1. This Complaint arises from the efforts of H.A., parent of E.B., to enforce the right of her child to obtain a free appropriate public education ("FAPE") by having the District provide an appropriate placement to which E.B. can be transferred upon their imminent discharge from their current residential placement on April 3, 2021.

2. E.B. ("they/them") is a twelve-year-old transgender student who currently attends The Sonia Shankman Orthogenic School ("The O School"), a residential school, where they were placed by the District. The District has identified E.B. as a child with a disability under the

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2, E.B.'s initials are provided in lieu of their full name, as they are a minor. *See* Fed. R. Civ. Pro. 5.2(a)(3).

1

category of emotional disability in accordance with the Individuals with Disabilities Education Act ("IDEA"). E.B. has multiple diagnoses, including Post-traumatic Stress Disorder, Major Depressive Disorder Recurrent Episode Unspecified, and Intermittent Explosive Disorder. Ex. A.

3. Prior to being found eligible by the District for an Individualized Education Program ("IEP") on March 12, 2018, E.B. experienced eleven psychiatric hospitalizations. Ex. B.

4. On June 1, 2018, the District placed E.B. in a residential facility – Change Academy Lake of the Ozarks ("CALO") through their IEP. Ex. C. ¶ 5.

5. On August 16, 2020, E.B. was discharged from CALO and returned to their home in Chicago while waiting for an appropriate placement to become available. *Id.* ¶ 6.

*6.* Between August 16, 2020 and September 23, 2020, E.B. did not have a residential placement and was psychiatrically hospitalized on two separate occasions for approximately one week each time due to suicidal ideation and aggression. *Id.* ¶ 8.

7. On about September 23, 2020, E.B. was discharged from their inpatient hospitalization program directly to their current residential placement, The O School. Ex. A. at 3-4.

8. In January 2021, E.B. attempted suicide while at The O School and was psychiatrically hospitalized at Garfield Park Hospital from January 12, 2021 through January 21, 2021. E.B. was again hospitalized at Lurie Children's Hospital from February 5, 2021 through February 17, 2021. Ex. C. ¶ 9.

9. On February 10, 2021, The O School notified H.A. that it would be discharging E.B. from its program because it could not meet their needs. *Id.* ¶ 10.

10. On February 10, 2021, H.A. contacted the District to request alternative residential placement options for E.B. *Id.* ¶ 11.

11. H.A. immediately began researching residential programs on her own and found the Justice Resource Institute ("JRI") Glenhaven program in Massachusetts that can meet E.B.'s needs and has a placement for E.B. readily available. *Id.* ¶ 12; Ex. D. The JRI Glenhaven program is not currently approved by the Illinois State Board of Education ("ISBE"). It applied for state approval on March 17, 2021 and is expecting a response between April 5, 2021 and April 14, 2021. Ex. D. ¶¶ 11-12.

12. On February 26, 2021, the District provided H.A. with one potential residential placement option, Devereaux, which H.A. determined could not meet E.B.'s needs due to safety concerns (including riots, arrests, child-on-child sexual activity) and lack of appropriate LGBTQI programming in housing, clinical support, and medical support. Ex. E; Ex. F; Ex. C. ¶¶ 17-18. H.A. informed the District of her concerns about the program and the District acknowledged and understood her concerns and asked to refer E.B. to other residential placements, to which H.A. agreed. Ex. C. ¶¶ 19-21; Ex. G; Ex. H; Ex. I.

13. At an IEP meeting on March 2, 2021, The O School determined E.B.'s discharge date would be April 3, 2021. Ex. C ¶ 22. The O School provided written notice of this on March 5, 2021. Ex. J.

14. Between March 4, 2021 and March 9, 2021, through her attorneys, H.A. requested that the District provide her with a plan for E.B.'s placement upon discharge from The O School. The District did not present any viable school options and indicated that it could not expedite any process with JRI Glenhaven. Ex. C ¶¶ 23-27; Ex. K; Ex. L; Ex. M; Ex. N.

3

15. On March 12, 2021, H.A. filed a request for a due process hearing to ensure that E.B. receives a FAPE upon their discharge from The O School on April 3, 2021. The Impartial Hearing Officer was assigned on March 15, 2021. She held an initial status call on March 19, 2021, at which time she granted the request for leave to file an Emergency Motion to Compel Placement and entered a briefing schedule. Ex. C ¶ 28.

16. On March 24, 2021, H.A. filed an Emergency Motion to Compel Placement with the Impartial Hearing Officer. *Id.* ¶ 29. This Motion was denied on March 27, 2021 on the basis that the Impartial Hearing Officer found that she has no authority to grant a placement request without a due process hearing and indicated that federal court is the proper venue for this request. Ex. O.

17. The Defendants waited over six weeks after learning of E.B.'s discharge from The O School to refer them to any residential placements. Ex. P; Ex. Q. The District finally made some referrals on March 26, 2021, a mere eight days before E.B.'s discharge. Ex. Q.

18. E.B. does not have a residential placement to attend upon their discharge from their current placement on April 3, 2021 and based on past history is likely to suffer harm without an immediate placement. Ex. A at 3-4; Ex. C ¶ 46.

19. Defendants' impending action of failing to provide E.B. with a FAPE violates their rights established by IDEA, 20 U.S.C § 1401 *et seq.*, and accompanying regulations; and 42 U.S.C. § 1983 for deprivation of rights secured by IDEA.

20. Therefore, H.A., on her own behalf and on behalf of E.B., asks this Court to enjoin Defendants to place E.B. immediately at JRI Glenhaven.

**JURISDICTION AND VENUE**

21. This Court has jurisdiction over E.B.'s claims pursuant to 28 U.S.C. § 1331

4

(conferring jurisdiction over civil actions arising under laws of the United States); 28 U.S.C. § 1343(a)(3) (conferring jurisdiction over civil actions to redress the deprivation, under color of any state law, of any right secured by any Act of Congress providing for equal rights of citizens); 28 U.S.C. § 1343(a)(4) (conferring jurisdiction over damages to secure equitable or other relief under any Act of Congress providing for the protection of civil rights); 42 U.S.C. §§ 1983-1988; 42 U.S.C. § 12101 et seq.; and IDEA, 20 U.S.C. §1401 et seq.

22. This Court is the appropriate venue under 28 U.S.C. § 1391(b), in that the Defendants are subject to personal jurisdiction in this District, and the events giving rise to this Complaint occurred in this District.

## THE PARTIES

23. E.B. is a twelve-year-old child with a disability and is a resident of Chicago, Cook County, Illinois.

24. When they were nine years-old, Defendants identified E.B. as a child with an emotional disability who is eligible for special education and related services, pursuant to IDEA, as defined by 20 U.S.C. §1401(3).

25. H.A. is E.B.'s parent and a resident of Chicago, Cook County, Illinois.

26. Defendant Chicago Board of Education, also known as CPS, is constituted within Illinois for administrative control and direction of public elementary schools in the City of Chicago, which is located in the Northern District of Illinois. CPS constitutes a "local educational agency" within the meaning of IDEA (20 U.S.C. §1401(19)(A)).

27. Defendant Janice Jackson, CEO of CPS, is named in her official capacity as the CEO of CPS.

28. The Defendants receive federal funds from the United States Department of

Education pursuant to IDEA for the purpose of educating children with disabilities and are responsible for ensuring that E.B. receives a free and appropriate public education ("FAPE") under the law, as well as the relevant other statutory protections. *See* 20 USC §§ 1401(9)(d); 1412(a)(1).

## STATUTORY FRAMEWORK

29. By virtue of its receipt of federal funds used to operate a special education program, the District must comply with the requirements of the IDEA and accompanying regulations. *See* 34 C.F.R. § 300. The IDEA determines that "[i]f placement in a public or private residential program is necessary to provide special education and related services to a child with a disability, the program, including non-medical care and room and board, must be at no cost to the parents of the child." 20 U.S.C. § 1412(a)(5)(A) and 34 C.F.R. § 300.104.

30. Under IDEA, every student receiving special education services must be given an annual IEP. *See* 20 U.S.C. §§ 1401(14), 1412(a)(4), 1414(d). The IEP sets forth all the special education and related services the District must provide to the student and lists educational goals for the student each year. 34 C.F.R. § 300.320(a)(4). The IDEA provides the opportunity for parents to file for an impartial due process hearing when a parent has a dispute with the school district about the student's special education and related services, which includes the student's placement. 20 U.S.C. § 1415(f)(1)(A).

31. The IDEA requires "[a]s soon as possible following development of the IEP, special education and related services are made available to the child in accordance with the child's IEP. 34 C.F.R. § 300.323(c)(2). Illinois has defined "as soon as possible" to be 10 school days: "When an IEP has been developed or revised, the district shall provide notice in accordance with 34 CFR 300.503(b) and (c) immediately to the parents, and implementation of

the IEP shall occur no later than 10 school days after the provision of this notice or by the beginning of the following school year…." Ill. Admin. Code 23, § 226.220(a).

## FACTUAL ALLEGATIONS

32. E.B. is a twelve-year-old transgender student identifying as male and has multiple diagnoses, including Post-traumatic Stress Disorder, Major Depressive Disorder Recurrent Episode Unspecified, and Intermittent Explosive Disorder. Ex. A at 1, 4.

33. Between 2016 and 2018 E.B. was psychiatrically hospitalized eleven times due to violent and unpredictable behavior, homicidal ideation, and the inability to manage their emotions. Ex. B at 4.

34. E.B. has been eligible for an IEP since March 12, 2018 as a student with an emotional disability. Ex. R.

### E.B. requires continuity of services in a residential placement to receive a FAPE.

35. E.B. was placed at CALO, a residential school from June 1, 2018 through August 16, 2020. Ex. C ¶¶ 5-6.

36. Upon discharge from CALO, E.B. experienced a gap between their discharge and eventual placement at The O School. Ex. A at 3-4.

37. This gap in service resulted in harmful consequences:

> [E.B.'s] admission to the Orthogenic school was delayed, so that despite a discharge from CALO on August 16th, 2020, [E.B.] had to return home between residential placements. Unfortunately, this led to severe emotional dysregulation which resulted in several hospitalizations within the space of three to four weeks. *Id.*

38. While at The O School, in January 2021, E.B. attempted suicide. E.B. was psychiatrically hospitalized from January 12, 2021 through January 21, 2021, and again from February 5, 2021 through February 17, 2021. Ex. C ¶ 9. The O School determined that it could not meet E.B.'s needs and ensure their safety even with physical management and removing

7

clothing items with strings to prevent self-strangulation. Ex. J.

39. The O School indicated to H.A. that it would discharge E.B. on February 10, 2021. Ex. C ¶ 10.

40. At an IEP meeting on March 2, 2021, The O School determined that E.B.'s discharge date would be April 3, 2021. *Id.* ¶ 22.

41. The O School provided written confirmation of April 3, 2021 as E.B.'s discharge date on March 5, 2021. Ex. J.

42. The O School recommended in its notice of discharge "that [E.B.] attend a residential program that has a continuum of care within the program in order to adequately support the acuity behaviors as they emerge and therefore reduce the frequency of hospitalizations. In addition, [E.B.] would benefit from a program that has a focus on trauma or relationship repair." Ex. J at 2.

43. When E.B. learned of their upcoming discharge from The O School they wrote:

> I am having a lot of negative thoughts about myself because of this. I keep telling myself "I am not worthy, everybody gave up on me and that is why I am leaving. I am not only a bad person, but I am a stupid, lonely person." And I can't stop saying that in my head. Ex. S at 1.

44. A break in services will likely cause emotional dysregulation for E.B. and be harmful to their health and safety. *See* Ex. J.

45. There is no dispute that E.B. requires a residential placement without a gap in services.

**The District has failed to identify any appropriate residential placement upon E.B.'s discharge on April 3, 2021.**

46. When H.A. learned of The O School's plan to discharge E.B. on February 10, 2021, she contacted the District on the same day requesting residential placement options. Ex.

8

C ¶¶ 10-11.

47. When H.A. did not receive a response from the District, H.A. contacted the District again on February 12, 2021 and February 17, 2021 through her attorneys requesting placement options for E.B. *Id.* ¶¶ 12-13; Ex. T; Ex. U.

48. The District stated to H.A. on February 21, 2021 that it was not pursuing other residential placements at that time because it was planning on working with The O School to retain E.B. Ex. C ¶ 15.

49. The District provided one placement recommendation to H.A. on February 26, 2021. It recommended placement at Devereaux, a residential school in League City, Texas. Ex. E.

50. H.A. investigated Devereaux and found that it could not meet E.B.'s needs. The program had recent reports of riots, arrests, and child-on-child sexual activity. Ex. F. Also, the program did not provide appropriate LGBTQI services for E.B.'s unique needs related to appropriate housing, trained clinicians, appropriate social skills opportunities, and medical treatment. Ex. C ¶ 18.

51. On March 1, 2021, H.A. expressed her concerns about Devereaux to the District. *Id.* ¶ 19.

52. The same day, the District acknowledged her concerns and asked if it could refer E.B. to other residential placements. H.A. agreed. *Id.* ¶¶ 20-21.

53. After The O School notified H.A. and the District of E.B.'s April 3, 2021 discharge, H.A. again asked the District on March 4, 2021 and March 9, 2021 for other residential placement options to investigate. *Id.* ¶¶ 23-24; 26-27; Ex. K; Ex. L; Ex. M; Ex. N. The District did not provide any. Ex. L; Ex. N.

9

54. With growing concern, pursuant to 20 U.S.C. § 1415(f)(1)(A), H.A. filed for an impartial due process hearing on March 12, 2021 to ensure the District provides E.B. with a FAPE upon their discharge from their residential placement on April 3, 2021. Ex. C ¶ 28.

55. Because of the fast-approaching deadline for E.B.'s discharge on April 3, 2021 and because she had not received any assurance of a placement for E.B. from the District, H.A. filed an Emergency Motion to Compel Placement on March 24, 2021. *Id.* ¶ 29.

56. On March 26, 2021, over six weeks after H.A. requested residential placement options, and just eight days before E.B.'s discharge from The O School, the District referred E.B. to twelve residential placements. *Id.* ¶ 30; Ex. P; Ex. Q.

57. The District never discussed eleven of the twelve placements with H.A. The one placement the District discussed with H.A. was Devereaux, which she determined was not appropriate. Ex. C ¶ 18.

58. H.A. immediately began researching each program and determined that none of them are appropriate to meet E.B.'s needs. *Id.* ¶ 33.

59. Grove cannot meet E.B.'s needs as an appropriate placement on April 3, 2021 because of its lengthy admissions process where it typically admits students in only September. Also, it does not accept students who experience suicidal ideation or who have attempted suicide. *Id.* ¶ 34.

60. Neurorestorative cannot meet E.B.'s needs because E.B. is too young for their programming. *Id.* ¶ 35.

61. Allendale does not describe any services it offers to address the needs of LGBTQI students. H.A. was unable to obtain more information from any personnel from the school. *Id.* ¶ 36.

62. Little Keswick cannot meet E.B.'s needs because it serves only boys. *Id.* ¶ 37.

63. Chaddock has already determined on two occasions that it cannot meet E.B.'s needs when it denied them placement in April 2018 and September 2020. *Id.* ¶ 38.

64. Latham cannot serve E.B.'s needs because it requires that students qualify under the intellectual disability category of eligibility. *Id.* ¶ 39.

65. Genesee Lake cannot meet E.B.'s needs because it stated that it was not appropriate for transgender students. *Id.* ¶ 40.

66. Hope cannot meet E.B.'s needs because it requires that students qualify under the autism and/or intellectual disability categories of eligibility. *Id.* ¶ 41.

67. Glenholme cannot meet E.B.'s needs because as a part of Devereaux it does not provide a safe environment and cannot meet their unique needs with respect to LGBTQI programming. *Id.* ¶ 42.

68. Heartspring cannot meet E.B.'s needs because it requires that students qualify under the autism and/or intellectual disability categories of eligibility. *Id.* ¶ 43.

69. Indian Oak cannot meet E.B.'s needs because it has programming for females *or* males that would not meet E.B.'s needs as a transgender student, and it does not describe any services to address students with LGBTQI needs. *Id.* ¶ 44.

70. The District has not presented any program that can meet E.B.'s unique needs. *Id.* ¶ 45.

71. On March 27, 2021, the Impartial Hearing Officer denied H.A.'s Emergency Motion to Compel Placement. The Impartial Hearing Officer found that she has no authority to grant a placement request without a due process hearing and indicated that federal court is the proper venue for this request. Ex. O.

**H.A. identified JRI Glenhaven as an appropriate placement that can meet E.B.'s needs and is readily available to accept them on April 3. 2021.**

72. Upon learning of The O School's intent to discharge E.B., H.A. began researching residential placements. Ex. C ¶ 10.

73. H.A. found the JRI Glenhaven program in Massachusetts. *Id.*

74. JRI Glenhaven specializes in working with students with severe mental health needs, including students who have experienced trauma. Ex. D ¶ 4.

75. JRI Glenhaven has a specific residence, called Lanewood, that provides comprehensive clinical, educational, vocational, and medical services for LGBTQI youth. *Id.* ¶ 5.

76. JRI Glenhaven is not currently a vendor with the District. However, it began the vendor process on March 5, 2021. *Id.* ¶ 10.

77. JRI Glenhaven is not currently approved by the Illinois State Board of Education ("ISBE"). However, it applied for state approval on March 17, 2021 and expects to receive a response between April 5, 2021 and April 14, 2021. *Id.* ¶¶ 11-12.

78. JRI Glenhaven has accepted E.B. and believes that it can meet their needs. *Id.* ¶ 8.

79. JRI Glenhaven has space available for E.B. to start on April 3, 2021. Id. ¶ 7.

80. The District has not indicated any disagreement that JRI Glenhaven is an appropriate program for E.B. *Id.* ¶ 48.

81. The District has stated that it cannot refer E.B. to JRI Glenhaven until it is approved by the state and has completed the District's vendor process. *Id.*

82. H.A. is willing to consider all appropriate placement options but has not been given any by the District and is not aware of any programs that have accepted E.B. *Id.* ¶¶ 45-46.

83. The JRI Glenhaven program costs $619.15 per day. *Id.* ¶ 49.

84. H.A. is a single parent of triplets. Two of her children have IEPs and one of her children has a 504 Plan. Her children qualify for Medicaid. Last month, she received $3974.04 in child support as her sole financial resource and cannot afford to privately pay for the JRI Glenhaven program. *Id.* ¶ 50.

85. Defendants' failure to ensure an appropriate residential placement of E.B. upon their discharge from The O School on April 3, 2021 will cause them irreparable injury for which there is no adequate remedy at law.

## LEGAL CLAIMS

### Count I

### Violation of Section 1983 and the Individuals with Disabilities Education Act

86. Paragraphs 34-85 are incorporated as if set forth fully herein.

87. Under IDEA, E.B. has a clear, enforceable federal right to a free appropriate public education, and H.A. to one on E.B.'s behalf. See 20 U.S.C. § 1412(a)(1).

88. E.B. and H.A. are intended beneficiaries of IDEA, which confers upon them, among other things, the right to a residential placement at no cost to the parents if such a placement is necessary to provide the student with special education and related services. 34 C.F.R. § 300.104 (2020).

89. Furthermore, the IDEA imposes on the State a duty to ensure there is "no delay in implementing a child's IEP, including any case in which the payment source for providing or paying for special education and related services to the child is being determined." 34 C.F.R. §

300.103(c) (2020); see also Educ. Expenses for Child. in Private Residential Facilities, 44 IDELR 46 (OSEP 2008) (reiterating that the requirements of 34 C.F.R. § 300.103(c) (2020) apply to the placement of students in residential treatment facilities).

90. The State of Illinois has interpreted this requirement to mean 10 school days: "When an IEP has been developed or revised, the district shall provide notice in accordance with 34 CFR 300.503(b) and (c) [sic] immediately to the parents, and implementation of the IEP shall occur no later than 10 school days after the provision of this notice or by the beginning of the following school year…." Ill. Admin. Code 23, § 226.220(a) (2021).

91. The Parties agree that the September 28, 2020 IEP places E.B. in a residential placement and that E.B. requires a residential placement to receive a FAPE due to their significant therapeutic needs, history of psychiatric hospitalization, and suicide attempts.

92. The Defendants have had ample notice that E.B. requires a new residential placement since at least February 10, 2021 when E.B.'s mother contacted the District. The Defendants then received confirmation at the IEP meeting on March 2, 2021 and a formal discharge letter on March 5, 2021 of E.B.'s official discharge date of April 3, 2021.

93. Defendants have failed to comply with 20 U.S.C. § 1412(a)(1), 34 C.F.R. § 300.103(c) (2020), Ill. Admin. Code 23, § 226.220(a) (2021) by failing to identify any appropriate residential placement for E.B. and then by failing to provide a placement at the parent identified JRI Glenhaven due solely to administrative and funding logistics.

94. Defendants acted under color of law in depriving E.B. and H.A. of their federal rights.

95. Further, Defendants conducted this deprivation in egregious fashion, knowing that their actions would result in a disruption to E.B.'s daily routine and irreparable harm to E.B.'s education, causing extreme emotional distress to E.B. and H.A.

96. Defendants failed to refer E.B. to any placements for over six weeks despite the impending discharge date. Defendants finally sent referrals but only after H.A. filed her Emergency Motion for Placement and a mere eight days prior to E.B.'s discharge from The O School. Defendants have failed to identify any appropriate state-approved placements despite knowledge of E.B.'s need for consistency in placement. The District acted without reason, in bad faith, and with gross misjudgment.

97. The District acted with at least deliberate indifference to the strong likelihood that a violation of E.B.'s and H.A.'s federally protected rights would result from the failure to promptly identify an appropriate residential placement.

98. All hardships in this case fall upon E.B. and H.A.. E.B. requires an immediate placement upon their discharge from The O School. E.B's mother cannot afford to place E.B. unilaterally and try to secure reimbursement from the District. The District is financially responsible to pay for E.B.'s timely and appropriate residential placement pursuant to federal law. In failing to do so, the District has denied E.B. a FAPE.

99. The public interest is served by requiring Districts to comply with IDEA and by having students receive a FAPE.

100. E.B. and H.A. have exhausted attempts at enforcement through the administrative due process procedure and have no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, E.B. AND H.A. request judgment as follows:

15

A. Declare that the Defendants acted in their official capacities and have acted in violation of Section 1983 without reason and with bad faith, gross misjudgment, and deliberate indifference by depriving E.B. of their rights in violation of the IDEA.

B. Issue without requirement of a bond a Temporary Restraining Order and Preliminary Injunction, placing E.B. at JRI Glenhaven, a residential school in Massachusetts, upon their discharge from The O School on April 3, 2021.

C. Award E.B. and H.A. their costs and attorney fees pursuant to 42 U.S.C. § 1988; and

D. For such other relief as the Court may deem just and proper.

Dated: March 30, 2021                                      Respectfully submitted,

/s/ Olga F. Pribyl

Melanie Grant
EQUIP FOR EQUALITY
20 N. Michigan Avenue, Suite 300
Chicago, IL 60602
(312) 341-0022
*Counsel for Plaintiffs*